Good morning, Your Honor. May it please the Court, Bob Varma for Joshua A. And at Council's table is Ms. Clancy, and in the audience are Joshua's parents. Your Honors, we are here today asking this Court to find that neither the administrative law judge nor the district court applied the correct analysis when determining whether the Individualized Education Plans, or IEPs, prepared by the district actually offered Joshua a meaningful educational benefit. Counsel, tell me if I understand this right. There's an expert in the field named Lovas. I don't know how you pronounce it. Lovas. Dr. Lovas? Ivar Lovas, yes. He and many people who agree with him think that there's one particular type of therapy for children with autism. Others in the field have criticized his work, as I understand it, on the ground that his higher remission rates or improvement rates are due to looser diagnosis or that it just isn't adequately proved in other respects, and they think other modalities are probably at least as effective. As I understand it, under Rowley, we're not supposed to resolve that sort of scientific dispute. I'm a little confused about why there is room under Rowley and under Capistrano for us to do what you want, which I think is to require the school to follow 100 percent Lovas approach. Tell me, educate me. Certainly. In this particular case, Your Honor, the program that was being used with Joshua, while it was based on applied behavior analysis, it was not a purely Lovas program. Therapeutic Pathways, which is the agency that was implementing the program, they have within their own program, they have different techniques that aren't necessarily everything that the Lovas program would do. So there is some difference. But in this case, what we are asking the court to do, why we are asking the court to do what we are, is what we are saying is where the ALJ and the district court failed is they never analyzed what actually would be appropriate for this child, given his particular potential. And that is the analysis that is missing. Once you do that, you first have to look at what do you mean that they didn't analyze, considering his potential? It looked to me like an extremely lengthy, careful opinion by the administrative law judge, and we commented on that as a reason to defer. And I had called it Capistrano. I suppose Wartenberg is probably more helpful to you. What is the difference? The difference is, Your Honor, the standard that was applied was that the IEP simply has to confer some educational benefit. And since that time, we have had the 1997 amendments and now the 2004 amendments to the IDEA, and we have cases such as Adams and Diehl and recently NB versus Heldman. You're saying the ALJ just looked to see if it conferred some as opposed to appropriate educational benefit? As opposed to meaningful educational benefit. And I think the best sample of that or example of that is the Diehl case, wherein the court said in order to get to meaningful benefit, what we have to look at is what is this child's actual potential? And that, under Rowley, is allowed, because Rowley says this is not a one test for every case. What you have to do is look at the substantive standards of the act in place at the time that the case arises. And in this case, the act that was in place had moved from basic opportunity and access to the school environment to actually wanting and desiring meaningful benefit for these children. I had a little trouble with that. The Diehl court, I didn't have trouble with meaningful educational benefit, because I think Rowley itself refers to meaningful educational benefit. The Diehl court actually went quite a bit further and in a way that was contrary to Rowley, because the Rowley determination was, no, you don't have to give this very gifted deaf child more education to gauge by her potential. Now, I didn't see any language change. This is the argument the opposing counsel makes, that changed the language of free and appropriate education. And so it was troubling to me, how could we go as far as the Diehl court did, which seems contra Rowley, which specifically interprets that language. I guess what I should say is we are not asking that the court go beyond what the Rowley court said, but what we are asking for is that under that analysis, and we're not asking that the court step as far as Diehl did in determining whether ABA or a different type of program was appropriate, what we are saying is the key piece missing in this case is there is no analysis based on, this child was for two years in a program that the district funded, co-funded with other agencies. They approved it. And no time was it raised, wait, this program is maximizing this child's benefit or is providing more benefit than what would be understood. Rowley says you don't have to maximize. Correct. And what I'm saying is for two years the district went along with that program, so therefore there is no argument that the program that was being provided to him somehow maximized his potential or went beyond Rowley. What we are saying is if that program was appropriate for two years, that is where you must look to see what is his potential. And when you look at that, what you find through the independent testing that went on during that time is that this child has the chance to get to what would be average functioning. That is his potential. It's not his maximum potential, but that is his potential. That analysis was never done by either of the lower jurisdictions. The school district had its witnesses saying, what we're offering as an IEP is a good program, that progress will be made. We think it's preferable using a stoolbox approach to just purely the ABA method. And the ALJ credited that, and the district court, as instructed in Rowley in our cases, deferred to that determination. How do we get around that? I think that's where the evidentiary analysis is missing, because what the ALJ ignored was key testimony and evidence that was presented. Their own expert who said let's use the toolbox also said teach, which is one of the strategies the district wanted to use, is not appropriate for this child. So you have conflicts within their own evidence. You have the teacher who designed the goals and objectives say that we're going to use incidental teaching as one of the ways to teach this child. That was one of the tools in their toolbox. If you look at the evidence, as she continues to testify, it comes out there's nothing that this child has learned that he has learned through incidental teaching. And she assigns 25% of the goals to that. Counsel, in Rowley on page 200, it says that implicit in the congressional purpose is that the access be sufficient to confer some educational benefit on the handicapped child. They reject maximize and they say some. Why doesn't that require rejection of your theory? Because, Your Honor, as this Court recently in as recently as in Enby v. Hellgate pointed out, it is not some educational benefit. It is meaningful benefit. I don't know if there's any difference, and I don't know if Rowley would allow us to interpret meaningful as different from some. I think, Your Honor, our argument is that there is a difference, which is why the courts have actually set out that change to say we are no longer, while Rowley is the law, we have to examine the act in the changes that it's gone through. I guess I'm puzzled as to why what the school district was offering was not meaningful educational benefit. I mean, their witnesses clearly thought it was, and the ALJ agreed. And I think that is where we get to the next part of the act, which is the 2004 changes, which said that in the IEP you have to offer services that are based on peer-reviewed research. And that was one of the things that the parents and the district had a great disagreement on. And the parents presented evidence reports, research reports, showing the district why their toolbox or eclectic model had been proven not to be effective. The district never presented anything back. Even in hearing, the district never presented any peer-reviewed research, showing that their toolbox approach worked. However, what they said was we have thousands of pages of evidence that this works, and the ALJ relied on that, and it's one of his comments, saying there's thousands of pages of research that the district says they have. They had the burden, under Schaefer-Wiest, the district brought this case. They had the burden to prove why their proposed change in the program was appropriate. And that's one of our contentions. We pointed out for the district court 27 different errors. Some of them were, sure, some of them may have been typographical, but some of them were key errors, including making findings on evidence testimony that did not exist, in order to then turn around and credit the witness. And those are reasons we believe the deference is not due to the ALJ. The school district provides the Federal Register with a preamble where the Department of Education says, well, peer review is a fairly loose definition, and it's not required. So why was that an error to say, well, look, all of these educators use, every educator uses the toolbox approach, has had good results. Why isn't that either sufficiently peer reviewed or doesn't matter? Because the Department of Ed's guidelines say it's okay to provide a program that the IEP deems is appropriate. It doesn't have to be peer reviewed. But the contrary is what we're saying, that when peer reviewed evidence does exist, that has to be considered by the IEP team and then subsequently by the ALJ or the district court. And that was not done in this case. And that's our contention with respect to that piece. But I think that one other thing I would like to point out is that the reason we bring up why the inappropriate standard was used and why his potential wasn't actually assessed by either the ALJ or the district court is because what it seems is being talked about here is methodology, and the court is saying we don't decide methodology, and that is true, except if you look at the way it is set out, is that the first thing that has to happen is we have to determine if the IEP is actually designed to confer some meaningful benefit. Then the second thing is that both the parent's chosen program and the district's proposed program have to be appropriate. In this case, and if that's the case, then the school district gets to pick. That's absolutely correct. But in this case, we never got through the first step of the analysis. Could you point to the page of the excerpts of record where the ALJ goes awry? I could, Your Honor, if it may take me a moment. I think there are several different parts where he went awry. One is the idea that the Rowley standard applies as some educational benefit. I think that what needs to be done is that it should be meaningful educational benefit. I still don't understand why there's any difference. It seems to me that if there is a difference, then the meaningful standard is impermissible because it's contrary to Rowley. If the words are interpreted in the ordinary, in the way that they're ordinarily used, I don't see where there is any difference between some and meaningful. As I understand it, what Rowley said is there has to be some benefit, but it's specifically rejected, maximized, and it used the word some. And this Court itself has said there is a difference, that it's not the some benefit, it's the meaningful. So I would like to reserve two minutes. Why isn't it meaningful if there's some? Because that is the change in the IDEA from the EHCA, which was in place at the time of Rowley, which was to at least get the kids into the school. The IDEA has moved forward saying we expect more. Meaningful is not meaningful to me. I don't understand what the word means. That's the issue, Your Honor. It has to be particular to each child's situation. What is meaningful for this child may not be for another child. What does it mean? What is meaningful? Meaningful means where the child has some opportunity to be in a program that will promote independence, self-sufficiency, progress academically, progress socially, that is specific to that child's potential. That is what we interpret meaningful to mean in this case. Now, Rowley says that if the child is in a regular school, that the education to be a free and appropriate education has to be sufficient so that the child's progressing from grade to grade. So, I mean, that's the standard Rowley puts for meaningful or some. Why isn't that enough? I mean, they obviously considered that issue. And I think, Your Honor, the Rowley case also goes on to say that merely passing grade from grade doesn't necessarily mean the program is appropriate. Getting good grades and moving on is not the way to judge whether that child is making progress. So there's some conflict within that language itself. But specifically in this case, the issue was never whether he was going to move grade from grade. I think he would do that in both programs. The issue was, for him particularly, where is he going to get educational benefit that will help him to move towards self-sufficiency and independence, which is the goal of the IDEA. I could not see in the ALJ's decision where your distinction between some and meaningful mattered. It looked to me like the crux of it was that the school district's witnesses testified that it was appropriate to blend different methodologies, and the students' witnesses testified that the LOVIS approach was the only methodology proved effective, and the ALJ said that there was no definitive answer. It looked to me like that rather than the standard is what determined the outcome. Am I misunderstanding it? Well, I think that my time is up, but if I can answer this question, Your Honor. The issue is what the ALJ said is slightly incorrect, because what we are looking at is not whether or not the LOVIS approach is appropriate, because that's already been done for two years, and everybody deemed it to be appropriate. The question was whether what the district was offering was appropriate, and that is where those research studies come into play. That is where the key evidence that was ignored by the ALJ are those research studies which say that this type of program does not work. Now, it is not Joshua's fault that this is a new thing and there are three studies. However, these studies are well done, peer-reviewed, which on the other side, the district never had any study that was peer-reviewed to show that its eclectic model worked, and the burden was on the district. The issue is not whether or not the LOVIS program was appropriate for this child, because that's what had been going on for two years by everybody's consent. So I think that was already answered by the parties themselves. Thank you, counsel. Thank you. Even though your time has expired, we'll give you one minute for rebuttal anyway. Thank you. Thank you. Counsel. Good morning, Your Honors. May it please the Court, my name is Marcy Gutierrez and I represent the appellee in this case, the Rockland Unified School District. We are here today to urge the Court to affirm the findings of the administrative law judge and the district court both found that the school district offered the student a free, appropriate public education based upon the controlling legal standards for fate. Both of the decisions of the underlying tribunals were squarely in line with Ninth Circuit precedent. Your Honors, this case is about what is the appropriate educational intervention. Has the student been receiving a pure LOVIS approach, or has he been receiving an eclectic approach? It's my understanding that the student has been participating in an applied behavioral analysis program provided by a private company named Therapeutic Pathways from roughly the age of two through the time that the student was approximately five, where he began participating in a general education setting. So he got pure LOVIS until he went to kindergarten. Until he went to preschool. Came up with the IEP saying eclectic. The student actually participated in a private school general education setting prior to and actually received special education services from the school district prior to the school district developing the student's kindergarten IEP. Can I ask you a question just slightly to the side? Because we have the stay put motion still pending before us. What's the current status? Is this motion still live, or is it moot? As a district brief, this Court, the stay put motion is moot. With the district's Court decision that was issued in March of 2008, stay put is no longer at issue. But where is the child now? Is the child still in the Therapeutic Pathways program? It is my understanding that the child is currently participating in a private school and also receiving aid support and supervision provided by Therapeutic Pathways. Is that co-funded by Rocklin, or is that now all private? The school district terminated its funding of that program with the district's Court decision in March of 2008. But, Your Honors, the critical thing that this Court needs to focus on in this case is whether or not Let's suppose, I think when you addressed mootness, you were addressing it on the assumption that your legal position is correct, that stay put only runs through district court. That's correct, Your Honor. Let's suppose that it doesn't. Is it moot then? If I understand this correctly, and what you just said correctly, the school district came up with an IEP, eclectic approach. The parents rejected it and kept the kids in private school at their own expense in order to fund, out of their own pockets, the LOBES approach. And that's where the kid is now. Have I got that right? You do have that right, Your Honor. How would stay put affect this if it isn't limited to district court? Well, obviously, stay put currently is a dispute between the parties, so it's not a moot issue. The school district believes that it submitted in its brief that stay put terminated with the findings of the district court in March of 2008. However, that currently is a dispute between the parties. I'm trying to figure out what it would mean if we decided one thing or the other, or whether it has any meaning. It seems like right now the school district is not giving them a thing, right? That's correct, Your Honor. And if the next circuit no education, no money, no nothing from the school district. The school district is continuing to convene the IEP process for the student in compliance with the IDEA's requirements. Is anybody who works for the school district currently seeing this student and providing him with any kind of education? The parents in this case have rejected the district's offer of educational services. You're going forward to the excuse. I want to know the fact. Is the school district, is there anything to stay put in? The idea of stay put is if the school has a program going, you don't move the kid from one thing to another until you settle the legal case. And I'm trying to find out whether it even matters, because right now the school district isn't doing anything for the kid. Your Honor, the school district is continuing to comply with its requirements under the IDEA to schedule and convene IEP meetings for the student. As I stated earlier, the school district terminated its funding for the district's program. You're saying the school district is having meetings to talk about what the individualized educational plan should be? That's correct, Your Honor. Is that what you just said? Yes. Okay. And that's all it's doing? That's correct, Your Honor. It's not paying and it's not educating. The school district is not funding any services for the student and is not providing any educational services to the student. Thanks. In this case, the court needs to decide whether or not it will affirm the findings of the administrative law judge. Can you talk now about Hellgate and that meaningful standard? Yes, Your Honor. The Students' Council has presented this court with a request to consider the new meaningful benefit standard as it was decided by the Hellgate case. The Ninth Circuit has consistently used the terms meaningful benefit, some benefit, or educational benefit interchangeably, and with the exception of the Hellgate case, the Ninth Circuit has never distinguished a different definition or interpretation of those phrases. In fact, the term meaningful benefit and some benefit really do not have a different meaning. The Hellgate case cited to Adams and Deal to support the proposition that meaningful benefit is some sort of heightened standard from the phrase some benefit. However, that citation was inappropriate. Adams does not stand for the proposition that meaningful benefit means something different than some benefit. I think what you're saying now is that your position is untenable under Hellgate, so we should call it en banc rather than follow it. No, Your Honor. I don't believe, first of all, that the Hellgate case actually changed the rally standard. I agree that this court needs to follow the precedent that has been established for the past 25 years since the 1982 U.S. Supreme Court decision of rally. And, in fact, the Ninth Circuit has repeatedly done that recently in the Hood v. Hellgate case. You have to follow Hellgate, too. You do have to follow Hellgate. And Hellgate did not change the standard for rally. The administrative law judge in this case did find that the district conferred and offered the student meaningful educational benefit. The district court decision that reviewed the administrative law judge's findings specifically said that the school district conferred meaningful educational benefit on the student when it developed the IEP. That statement of the meaningful benefit analysis that was undertaken by the district court, it's set forth in the district court's decision at page 7. The ALJ also specifically considered that. The question the ALJ looked at specifically in his decision was, do the IEP goals offer meaningful educational benefit? In finding in favor of the school district, both the ALJ and the district court found that the school district offered meaningful educational benefit. I think in Hellgate, well, never mind. So Adams, Hellgate relies on Adams, and Adams, if I'm correct, was construing pre-amendment IDEA, the 1996 version. But then it does have this language about this is a higher standard, this is different, this is post-amendment. What do you make of that language, then? How should we deal with that, given that we're bound by this as well as by Adams? Are you speaking of the Hellgate decision? In Hellgate, exactly. First, again, I believe that is dicta. What is important to note about the Hellgate decision is that the court said that regardless of whether the term meaningful benefit or some educational benefit is used, it was harmless error, because the ESY program in that case was actually found to be appropriate, regardless of whether the phrase was meaningful benefit or some educational benefit. Additionally, Congress has reenacted the IDEA at least three times since the rally decision. Congress has never redefined the definition of fate. When Congress reenacts a statute in the face of consistent judicial interpretation, it is presumed to be legislative approval of that prior definition. Therefore, we believe that since Congress did not redefine the definition of fate, that the fate standard, as it was originally defined by the 1982 decision and rally, is still the controlling standard. And I don't believe that Hellgate changed that standard. Counsel, let's suppose for purposes of discussion that there is a new standard and the standard is meaningful rather than some. Supposing that that's so, what difference does it make in the context of the ALJ's decision in this case? Your Honors, I do not believe that that is a new standard. Whether the term meaningful benefit is used, whether the term some benefit is used, if you look back at the Ninth Circuit cases, Hood, Parkview, Anaheim, Adams, Amanda Jay, those cases have all used those terms interchangeably. I must not have gotten my question across to you. Let's hypothesize, assuming without deciding, that there is a new standard and the new standard is meaningful rather than some. So let's not argue for the moment about whether there is a new standard or whether the new standard is meaningful. Assuming for purposes of discussion that that's so, I would like you to talk about the facts of this case and the ALJ's decision and tell me how the standard bears on the facts of this case. In this case, the ALJ specifically found that the school district's development of 14 annual goals identified all of the students' areas of need, and that the IEP that was developed for the students specifically was developed with the concept of what can we do, what kind of educational program can we provide to this child that will allow this child to develop the ability to functionally communicate with his peers, interact with his environment, and gain appropriate academic progress consistent with his kindergarten classmates. Direct me to the right page of the excerpts where the standard is applied to the facts of the case. If you look at the ALJ's decision, page 30 of the excerpts of records, 30 through 33 of the ALJ's decision, goes through his analysis of the educational benefit standard. The ALJ specifically said when looking at the benefit to be conferred on that student, the ALJ specifically said that the benefit is not to be de minimis or trivial. And in doing that, I believe that the ALJ did confer the proper analysis to find that the school district offered. I'm really not very interested in the ALJ's legal discussion. I'm interested in the factual discussion about the education of this child. If you look, the ALJ in this case had 48 specific distinct findings of fact. And if you look at the findings of fact, they are set forth in the decision beginning on page 2. So why don't you guide me to the good part? Okay. It's hard to find the good part because all of it's good. There are 48 separate findings of fact. But if you begin at page 7 of the decision, I'm sorry, excuse me. If you begin at page 3 of the decision, whether the IEP contained meaningful goals and objectives, it begins with factual finding number 7. If you continue on through factual finding number 7 through the remaining factual findings, the ALJ has taken us through his own factual analysis where he based his conclusion that the district did propose an IEP. It's no good at all. It says that what the IEP is designed to do, it doesn't talk about whether it will do it in a meaningful way or in some way. I'm looking for the good part. Okay. Your Honor, again, it's hard to point out there are 48 separate findings of fact in here. I believe that fact finding number 7. This is why I'm asking for help because the ALJ talks so much about the law instead of talking about the education of this child that it's easy to miss where he talks about the education of this child. And that's what I want to read. Well, Your Honor, again, I believe that if you read factual findings 8 through 23, the ALJ goes through piece by piece why he believes that the IEP goals would confer meaningful benefit on the student. Factual finding. One thing that I found was in paragraph 26 where he says the school district's witnesses testified that the eclectic approach is good and the student's witnesses testified that the love-ass approach is good. And now I'm looking for where the ALJ makes a finding. And the best I get is 27E, that the definitive answer is unknown. And I want to know, is there anything better than that? Is that it? Your Honor, no, that is not it. If you look at factual finding number 40, the ALJ specifically states that the student's experts' opinions in this case show that the choice of the eclectic methodology to educate the student did not render the offer of FAPE inappropriate. And the ALJ specifically found that the eclectic method was peer-reviewed to the extent practicable and as well would confer meaningful benefit on the student. Is there any talk anywhere in here about how they've tried something like this and it works or it's good or it provides educational benefit? In the ALJ's decision, he specifically relied on the testimony of Betty DeRegulo. Betty DeRegulo is the director of special education for the Rockland Unified School District who testified that Rockland Unified School District has used this particular approach with other students in their district and has found this approach to work. Additionally, the ALJ cites to the testimony of Aaron Staubel and Dr. Siegel, both who testified extensively. I can't see where Ms. DeRegulo says it works. She just says that she knows a lot and other people know a lot and they think this is best practices. Your Honor, Ms. DeRegulo's testimony is summarized in various portions of the ALJ's decision. Paragraph 42, particularly. And again, that paragraph 15, the ALJ makes specific findings. If you look at Ms. DeRegulo's testimony, which she provided to you in the excerpts of record, Ms. DeRegulo testified on three separate days in this hearing and provided substantial testimony regarding the ability of Rockland Unified School District to effectively educate children in the same manner. Additionally, Aaron Staubel and... Paragraph 15 looks like you found something. She's seen these students make educational progress with something similar. Is that the best you've got? Your Honor, it's hard to say. This is not the best I have. We'd have to go through each of the three different paragraphs that the ALJ refers to in Ms. DeRegulo's testimony. When I read 42, it's just I'm an expert. Take my word for it. When I read 15, at least she's saying she's seen somebody do well with this. I think that paragraph 15 represents the ALJ's use of his ability to summarize Ms. DeRegulo's testimony where she specifically testified in the hearing, and we provided to you in the excerpts of record specific examples of where Ms. DeRegulo has seen the multidisciplinary approach working for children with autism. Additionally, Dr. Siegel and Mr. Staubel both testified that there is substantial evidence to support the district's approach. Most recently, that research was summarized by the National Research Council in its report entitled Educating Children with Autism. I do see that I'm out of time, Your Honors, but we would like to request that this Court uphold the findings of the Administrative Law Judge and the District Court because we have to. Thank you. Thank you, Your Honor, for the one minute. Very quickly, the Hellgate case is not new. Your Honor, in Adams at page 1149 of the decision, the Court itself states that what we have to look at is whether the ñ in that case it was an IFSP, whether it would convey a meaningful benefit. So ñ But wasn't that pre ñ it was construing pre-amendment? It was a 1999 case. I believe that it construed ñ At the beginning of the case, doesn't it say they're looking at the 96? Correct. It was not construing the 97 amendments, but then that has consistently been followed in 2004, which was the Deal case, which construed the 1997 amendments because it was ñ Well, what does it matter? I mean, I read paragraph 16 of the ALJ's decision, and this Dr. Brooks says that under her supervision, students with autism receiving these sorts of services have made meaningful progress. I think that is where we have to look at what is meaningful for this child, and what Dr. ñ what's missing from this decision, what was ignored by the hearing officer, is her testimony that most of her experience is using TEACH, which their own expert said is not appropriate for this child. Using what? TEACH, which is one of the methodologies that was in the eclectic toolbox. Has this eclectic approach been tried on this child, or has it been all low pass? It has been tried, Your Honor. It was the approach of blending different things, which was tried on this child from 2003 to 2004 by this district, before they moved him to the therapeutic pathways program. That is another key fact that we put evidence on. And what is ñ the other thing that is missing from this ALJ's decision is a complete failure to analyze the testimony of the people that had actually worked with this child. These district witnesses and experts that we are talking about had no actual hands-on experience with this child. Ms. DiRegolo is not a person that has implemented, designed, or in any other way been responsible for these programs other than as an administrator. So to give her that role of being the expert on what is appropriate for an autistic child, especially for this child, is where we think there was an error. The best stuff in the excerpts where we can read facts about this child that show that the eclectic program will not provide it any benefit. We can provide by letter specific page numbers, Your Honor. I just wanted to give you a few now. What I would say is if we look at the testimony of the parents, testimony of the therapeutic pathway staff, testimony of Dr. Gina Green, and if we look at those three different sets of individuals, and also at the testimony of the administrator from the Alta California Regional Center, which is partly funding the program, that is where you find why these individuals believe that the eclectic program will not work for this child. Thank you, Counselor. Thank you, Your Honor. Moore v. Hilling, or I'm sorry, Joshua A. v. Rocklin is submitted.
judges: Hall, Nelson, Thomas